508 So.2d 938 (1987)
Marna B. SHORTESS, et al.
v.
TOURO INFIRMARY, et al.
No. CA-6658.
Court of Appeal of Louisiana, Fourth Circuit.
June 3, 1987.
Rehearing Denied June 22, 1987.
*939 Boris F. Navratil and James E. Toups, Jr., Breazeale, Sachse & Wilson, Baton Rouge, and Edward A. Rodrigue, Jr. and Robert I. Baudouin, Boggs, Loehn & Rodrigue, New Orleans, for appellants.
Harold A. Thomas and Robert D. Ford, Thomas, Hayes & Beahm, New Orleans, and Paul H. Due, Due, Smith & Caballero, Baton Rouge, for appellees.
Before GARRISON, BARRY and CIACCIO, JJ.
CIACCIO, Judge.
On November 26,1980, while a patient at Touro Infirmary, Marna Shortess received blood transfusions from a blood supply provided by the Blood Center of Southeast Louisiana (hereinafter referred to as the "Blood Center"). Mrs. Shortess developed a condition, which in February, 1981, was *940 diagnosed as "Non ANon B" hepatitis. On December 21,1981 the plaintiff filed an application with the Louisiana Medical Review Panel, against Touro Infirmary. La. R.S. 40:1299.41 et seq. On May 31, 1983 Marna Shortess filed suit against Touro Infirmary, the Blood Center and their insurer for damages due to personal injury. Melvin Shortess thereafter intervened to recover the reimbursement of medical expenses incurred as a result of his wife's personal injuries.
Following a presentation of Touro Infirmary's case, the trial court sustained Touro's motion for a directed verdict and dismissed this defendant from the suit. Thereafter, the jury cast the Blood Center and its insurer in judgment. It awarded Melvin Shortess the sum of $10,000 and Marna Shortess the sum of $25,000, plus expert fees and costs.
Plaintiffs Marna and Melvin Shortess appeal contesting the court's finding as to the liability of Touro Infirmary. They also seek an increase in the amount of damages awarded by the jury.
Defendants, the Blood Center and its insurer appeal the court's finding as to its liability and seek a reduction in the amount of the damage award. They also file, in this Court, for the first time, an exception of prescription.
We affirm the trial court's judgment granting Touro Infirmary a directed verdict and we sustain the exception of prescription filed by the Blood Center.

Liability of Touro Infirmary
Plaintiffs contend that the trial court erred in granting Touro Infirmary a directed verdict. Plaintiffs reason that Touro, by its actions, held itself out as a "manufacturer" and as such, it should have been held liable for the product (i.e., blood) it distributed which contained an inherent defect. C.C. Art. 2317. In support of their position that Touro is a "manufacturer" of the blood received, the plaintiffs reason that Touro furnished the blood and billed the plaintiffs for it. Additionally, they argue that Touro had its own blood bank and Mrs. Shortess was not in a position to examine the markings or label on the containers of blood she received.
In the case of Weber v. Charity Hospital, 487 So.2d 148 (La.App., 4th Cir., 1986) this Court discussed the hospital's liability as a distributor of defective blood. In Weber, supra at pp. 149-150 we stated:
Gaynell received the blood transfusion near the end of the month of November, 1980. The timing is important because it allows plaintiffs to pursue a theory of strict liability against defendants as pronounced by DeBattista v. Argonaut-Southwest Ins. Co., 403 So.2d 26 (La. 1981), unaffected by the legislative grant of immunity from such liability provided by La.R.S. 9:2797 as enacted by Acts 1981, No. 331, and amended by Acts 1982, No. 204, and by La.C.C. Art. 2322.-1, as enacted by Acts 1981, No. 611. See Faucheaux v. Alton Ochsner Medical Foundation Hospital and Clinic, 470 So.2d 878 (La.1985). Whether either defendant was negligent is immaterial to our determination of whether either or both should be held strictly liable.
The court held in DeBattista that under Civil Code article 2315 a blood bank distributor of blood is strictly liable in tort when blood it places on the market creates an unreasonable risk of harm to others and, in fact, results in an injury or disease to a human being. See Faucheaux, supra. By deciding, as noted above, that the transfusion caused Gaynell's hepatitis, the Supreme Court must have implicitly determined that the blood was defective, i.e. unreasonably dangerous to normal use. See De Battista, supra. IBB as the blood bank distributor of the defective blood is, under DeBattista, strictly liable to the plaintiffs.
Defendant IBB collected the blood from donors, processed it and sold it to defendant Charity, who purchased the blood in a closed system and simply administered it to the patient, charging a fee both for the blood and for the service. See Weber v. Charity Hospital, 475 So.2d 1047 (La.1985), footnote 5 at page 1052. In this case, Charity, as only an administrant of the blood, may not be held strictly liable. Any liability of Charity *941 must be based on proof that Charity was negligent in handling or administering the blood. The record does not establish any negligence or fault as to Charity. We hold, therefore, that Charity is not liable to plaintiffs.
In this case, the blood transfused was provided to Touro Infirmary by the Blood Center which had extracted it from the donors, screened and processed the blood for sale. It was thereafter sold to Touro Infirmary for a per unit fee which comprised the reimbursement of the processing fee and the non replacement fee. The blood was sold to the hospital in closed containers. The blood units, which each contain an imprinted number, were registered in the records of the hospital upon receipt. The units were also given an identification number by the hospital. A segment of the tubing attached to the bag of blood was removed and the blood in that segment was typed by the hospital. The blood units were thereafter refrigerated in the order of their date of expiration. A requisition for the blood was received from the nursing unit for the plaintiff's surgery. Six compatible blood units were provided, of which five units were administered and the remaining unit was returned to the hospital's blood storage area.
Accordingly, in this case, as in Weber the plaintiff was transfused in late November, 1980. The blood which was administered had been purchased by the hospital from a blood bank. The blood was sold in a closed system and was simply administered to the patient. The hospital charged a fee for the blood and the service. As such, Touro Infirmary was merely the administrant of the blood. It was not holding itself out as nor did it stand in the position of a manufacturer. As such it was correctly relieved of strict liability.
Additionally, our review of the record indicates no negligence nor fault on the part of Touro Infirmary. Touro did not know nor could it have known of the existence of the "non A-non B" hepatitis virus which contaminated the blood administered. The expert evidence establishes that the nature of the virus is unknown and there exists no known test for its detection.
Since the plaintiffs failed to establish a case of strict liability or negligence against Touro Infirmary, the trial court correctly granted this defendant's motion for a directed verdict. La.C.C.P. Art. 1810.

Exception of Prescription
The Blood Center and its insurer, in support of their exception of prescription, argue that the plaintiff's cause of action prescribed within one year from her discovery that she had hepatitis. These defendants allege that the plaintiff's condition was diagnosed in January, 1981 and thus her suit had to be filed against them within one year of that date. Thus they reason that since plaintiffs' suit against them was not filed until May 31, 1983, it had prescribed.
Additionally, the Blood Center and its insurer aver that prescription as against them was not interrupted by the filing of the application with the Medical Review Panel against Touro Infirmary, nor because of any solidary liability with Touro Infirmary. We agree.
Prescription for delictual actions begins to run from the day the injury or damage is sustained. La.C.C. Art. 3492. That is, when a party has enough notice to excite attention and put him on guard and to call for inquiry, he has sufficient knowledge to start the running of prescription. See: McDermott v. M. Electric & Construction Co., Inc., 496 So.2d 1105 (La. App., 4th Cir., 1986) citing Cartwright v. Chrysler Corp., 255 La. 597, 232 So.2d 285 (1970).
The record reveals that by February, 1981, the plaintiff was aware that she had contracted hepatitis. Prescription began to run from that time and the case against the Blood Center would have prescribed by February, 1982. This lawsuit was not filed until May 31, 1983.
We agree with the argument of the Blood Center and its insurer than an application with the Medical Review Panel against Touro Infirmary, a qualified health provider, did not interrupt prescription against the Blood Center, a non-qualified *942 health provider. This issue was addressed by the Louisiana Supreme Court in Ferguson v. Lankford, 374 So.2d 1205 at 1206-1207 (La.1979):
Plaintiff contends that the filing of a request for a medical review panel pursuant to the Medical Malpractice Act provides plaintiff with an additional ninety days whether or not the defendant has qualified for coverage by the act, because prescription is interrupted or suspended by filing a claim with the insurance commissioner. Plaintiff relies on the provisions of R.S. 40:1299.47(A) which states in part:
All malpractice claims against health care providers covered by this Part, ... shall be reviewed by a medical review panel established as hereinafter provided in this Section. The filing of the request for review of a claim shall suspend the time within which suit must be instituted, in accordance with this Part, until ninety days following the issuance of the opinion by the medical review panel.: (Emphasis added).
This contention lacks merit. The Medical Malpractice Act specifically provides in R.S. 40:1299.41(D):
"A health care provider who fails to qualify under this Part is not covered by the provisions of this Part and is subject to liability under the law without regard to the provisions of this Part. If a health care provider does not so qualify, the patient's remedy will not be affected by the terms and provisions of this Part." In reviewing the above provision in Everett v. Goldman, 359 So.2d 1256 (La. 1978), we noted:
"The most significant provisions of the act fit generally in the following scheme. A health care provider (and this category includes physicians, hospitals, ...) has the option of qualifying under the act. R.S. 40:1299.41(A)(1). If he or she does not qualify, that person is not covered by the provisions of the statute and the patient's remedy is not affected by the terms and provisions of the statute. R.S. 40:1299.41(D). Thus the patient of a health care provider who has not qualified is no different from any other tort or contract victim, while the patient of a qualified health care provider (one who has qualified under the act) is regulated by the act insofar as malpractice recovery is concerned." 359 So.2d at 1261-1262.
The ninety day suspension of R.S. 40:1299.47(A) follows "the issuance of the opinion by the medical review panel," and obviously was not intended to be applicable to cases in which no panel was convened because the "health care provider" was not "qualified" under the act. Prescription was not "suspended" by this provision.
We further agree with the Blood Center's argument that prescription as against it was not interrupted by the filing of the claim against Touro Infirmary, as these defendants are not solidary obligors.
As previously discussed, the trial court correctly found Touro Infirmary to be free from liability. As such, Touro Infirmary and the Blood Center are not solidary obligors.
Furthermore, even if Touro and the Blood Center were solidary obligors, for the reasons stated in Ferguson, supra, the filing of the claim against Touro with the Medical Review Panel would not have interrupted prescription against the Blood Center. In Ferguson, supra at 1208, the Supreme Court stated:
It would seem to follow logically that, since "[e]very act, which interrupts prescription with regard to one of the creditors in solido avails the other creditor [creditors]", every interruption with regard to one of the solidary debtors would avail the creditor. The code does not so provide, nor does our jurisprudence. Suit against one debtor bound in solido will interrupt prescription as to the others (as will an acknowledgment). C.C. 2007; R.S. 9:5801. But if one of the acts, described in code or statutes as interrupting prescription running in favor of a debtor, does not occur, there is no interruption. Here there was no suit, in any court, and no acknowledgment.
* * * * * *

*943 In order now to say that a claim, timely filed against health care providers, one "qualified" and none not "qualified," interrupts prescription running in favor of both, it would be necessary to hold that a proceeding under the Medical Malpractice Act is equivalent to a suit. It is not.
Suit against one solidary obligor will interrupt prescription as to all; filing a claim under the Medical Malpractice Act will not interrupt prescription against solidary obligors who are not "qualified" under the act.
In this case, Touro was a qualified health care provider to whom the Medical Malpractice Act applied and the Blood Center was not qualified under the act. The filing of a "claim" with the Medical Review Panel was not the filing of a "suit" which would have interrupted prescription.
The plaintiffs, in opposition to the Blood Center's exception of prescription, rely upon the doctrine of "contra non valentum agere nulla currit prescriptio" for support of their position that prescription was suspended against them. They reason that the identity of the preparer of the blood was only discovered a day or two before December 22,1982 and as such their suit of May 31, 1983 was timely.
The equitable doctrine of "contra non valentum ..." has recently been reaffirmed as a viable exception to the running of liberative prescription. Plaquemines Parish Commission Council v. Delta Development Company, Inc., 502 So.2d 1034 (La.1987). The Doctrine has been applied to prevent the running of prescription where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action. Plaquemines Parish Commission Council v. Delta Development Company, Inc., supra.
In this case there has been no showing that Touro nor the Blood Center either singularly or in conjunction with each other acted in any way to prevent plaintiffs from availing themselves of their cause of action. Rather, the evidence is clearly to the contrary. That is, the identity of the blood supplier was readily discernable from the records of the hospital. This information was not concealed from the plaintiff. The plaintiffs' diligent exercise of discovery procedures in conjunction with their Medical Review Panel application against Touro Infirmary would have disclosed the Blood Center's role in this case. Further the Blood Center did nothing to prevent plaintiffs from learning its identity as the collector of the blood. If the doctrine of contra non valentum applies at all it could only apply against Touroand prescription is not an issue in Touro's case.
For these reasons we find the doctrine of "contra non valentum ..." inapplicable to the facts of this case. Accordingly, prescription was not suspended and plaintiffs' cause of action against the Blood Center and its insurer had prescribed before this suit was filed.
For the reasons assigned the judgment of the trial court, sustaining Touro Infirmary's motion for directed verdict, is affirmed and the judgment of the trial court in favor of the plaintiffs and against defendants, the Blood Center of Southeast Louisiana and its insurer is reversed and plaintiffs' suit is dismissed. Plaintiffs to bear the costs of this appeal.
AFFIRMED IN PART, REVERSED IN PART AND DISMISSED.