CIACCIO, Judge.
The Louisiana Supreme Court reversed a judgment of this court which had dismissed plaintiffs’ suit on an exception of prescription. Shortess v. Touro, 508 So.2d 938 (La.App., 4th Cir.1987) writ granted 513 So.2d 1198 (La., 1987), rev. 520 So.2d 389 (La.1988). The case was remanded for our review of the jury’s award of damages. Shortess v. Touro, supra. We have reviewed the award and it is affirmed.
On remand the plaintiffs argue that the jury award was inadequate and should be increased. They urge this court to make an “independent review of the record without according any deference to the jury verdict” because the jury verdict was tainted by an erroneous jury instruction.
*448 Defendants, Touro Infirmary, The Blood Center of Southeast Louisiana, Inc. and their insurers contend the jury award is excessive and should be reduced.
On November 26, 1980 plaintiff, Marna Shortess underwent a surgical procedure at Touro Infirmary in which her spine was fused and a Harrington Rod was inserted to correct severe scoliosis. During surgery she was given five units of packed red blood cells which were contaminated with a hepatitis virus, causing Mrs. Shortess to contract chronic non-A/non-B hepatitis.
Plaintiffs argue that an erroneous instruction caused the jury to render a compromise verdict. In particular, plaintiffs allege that the following instruction was in error:
“If you find that the blood in question contained hepatitis virus, you must assume the blood bank knew this and you must next determine whether this blood was unreasonably dangerous to the patient.” (Vol. IV, pp. 172, 173) (Emphasis Supplied)
According to plaintiffs this instruction was erroneous because in DeBattista v. Argonaut Ins. Co., 403 So.2d 26 (La., 1981) the court found “as a matter of law that blood contaminated with hepatitis virus is defective, i.e., unreasonably dangerous to normal use.”
The plaintiffs also allege that the jury interrogatories on this issue further served to confuse the jury. The interrogatories were as follows:
We, the Jury, find as follows:
1. Do you find that the blood administered to Mrs. Shortess was contaminated with a hepatitis virus:
“Yes” yes or no
If you answer # 1 “no”, stop here; otherwise continue.
2. Did the presence of the hepatitis virus render the blood defective, in other words, unreasonably dangerous?
yes or no
If # 2 is answered “no”, stop here; otherwise continue.
3.Did Mrs. Shortess contract hepatitis as a result of the blood transfusion:
yes or no
If #3 is answered “no”, stop here; if “yes” continue.
»je jfc # tfc * #
Plaintiffs conclude that the jury compromised its verdict and rendered a smaller damage award because they felt the blood bank did not know that its blood was contaminated, but they also felt Mrs. Shortess was injured by the blood and should be compensated.
In support of their position that this Court should disregard the jury verdict and make an independent review of the record, plaintiffs rely upon two Louisiana Supreme Court cases. McLean v. Hunter, 495 So.2d 1298 (La., 1986); Suhor v. Gusse, 388 So.2d 755 (La., 1980).
In the McLean case supra, the Louisiana Supreme Court held that an independent review of the record was required because the trial court had erred in excluding essential evidence concerning the standard of care in a medical malpractice case.
In the Suhor case supra, the Court held that where a jury instruction regarding damages was erroneous an independent evaluation of the damages due plaintiff should be made.
We disagree with plaintiffs reasoning on this issue and the applicability of the cited cases.
First, we find nothing in the record to support plaintiffs’ allegation that the jury compromised its damage award as a result of an allegedly erroneous instruction.
Moreover, assuming, for the sake of argument, that the jury instruction was erroneous, such an error would have reasonably given rise to an erroneous verdict on the issue of liability, not damages. As such, this case is factually distinguishable from McLean, supra and Suhor supra. Therefore, we do not make an independent determination of damages, but rather, we review the record to determine whether the jury award constitutes an abuse of its dis *449 cretion. Perniciaro v. Brinch, 384 So.2d 392 (La., 1980); Reck v. Stevens, 373 So.2d 498 (La., 1979).
In its second assignment of error plaintiff argues that the jury award of $25,000 to Mrs. Shortess and $10,000 to Mr. Shor-tess is inadequate. The defendants counter that such an award is excessive.
In assessing damages in cases of offense or quasi offense, much discretion is left to the trial court. Perniciaro v. Brinch, supra. Before the appellate court will disturb such an award, the record must clearly reveal that the triers of fact abused their discretion in making the award based upon the particular injuries and their effect upon the particular individual who sustained the injuries. Perniciaro v. Brinch, supra; Reck v. Stevens, supra.
The record reveals the following testimony concerning Mrs. Shortess’ medical condition:
Dr. Salvadore LaRocca, an orthopaedic surgeon, testified that he saw Mrs. Shor-tess on August 25, 1980 at which time she was experiencing pain from a deformity associated with scoliosis and arthritis of the spine. At this time plaintiff was 43 years of age. Dr. LaRocca recommended surgery to correct the spinal curvature resulting from the scoliosis.
On November 26,1980 Dr. LaRocca operated upon Mrs. Shortess to correct her scoliosis. He inserted a Harrington Rod into her spine and took a bone graft from the patient’s pelvis. The surgeon stated that there was considerable bleeding during the operation and five pints of packed red blood cells were transfused into the patient.
Dr. LaRocca also stated that plaintiff experienced a successful recovery from the spinal operation. The fusion healed and the rod remained attached. The patient was fitted with a brace and allowed to walk some 7 days after surgery. She was discharged on December 13,1980 after having spent two weeks in the hospital.
Dr. LaRocca further testified that several months after discharge the plaintiff became jaundiced and was found to be suffering from hepatitis. He characterized her condition as “chronic persistent hepatitis”. He stated that she had abnormal liver functions at least until 1985.
Although he conceded he was not the primary physician responsible for treating plaintiff’s hepatitis, Dr. LaRocca stated that he felt this disease complicated his patient’s treatment and recovery. He testified that because of this condition he could not use the type of medicines he would normally use to treat this patient’s arthritic condition. He also postulated that the fatigue associated with the hepatitis prevented the plaintiff from performing her rehabilitative activities as required.
Under cross examination, Dr. LaRocca conceded that pain can also result in fatigue and it is normal to suffer fatigue within the first few months of surgery. Furthermore the plaintiff suffered from a mitral valve prolapse for which she took Inderal. A common side effect of this medication is fatigue. Plaintiff was also taking Naprosyn, Percodan and Parafen Forte as medications. Dr. LaRocca agreed that Na-prosyn and Percodan can cause elevated liver functions.
In 1983 Dr. LaRocca again operated upon Mrs. Shortess. He performed a bone graft to correct a deteriorated cervical disc. Pri- or to the surgery plaintiff was referred to Dr. Hyman, a gastroenterologist, who performed a liver biopsy on the plaintiff in order to determine her medical condition for purposes of administering an anesthetic at the time of surgery. Dr. LaRocca was informed that plaintiff still suffered from hepatitis.
In June, 1985 Dr. LaRocca performed a bone graft of the lumbar spine of Mrs. Shortess. The operation was to correct a similar procedure performed unsuccessfully in December, 1982. According to Dr. LaRocca, at the time of this latest operation, the plaintiff was still suffering from hepatitis and her normal liver functions did not return until late 1985.
Dr. William Luikart is a specialist in internal medicine. He examined the plaintiff in mid January, 1981 and found her to be *450 jaundiced. He found her liver functions to be elevated. However, most of plaintiffs liver function returned to normal in 3 to 4 weeks.
Dr. Luikart stated that the plaintiff had experienced hepatitis many years before. Through a process of elimination, Dr. Lui-kart arrived at a diagnosis for Mrs. Shor-tess of viral hepatitis, that is, non-A/non-B hepatitis which was most probably caused by her receipt of contaminated blood. In his opinion, the severe abnormalities from the disease lasted approximately 3 weeks, and thereafter, she had intermittent elevations of various liver functions.
Dr. Luikart concluded that plaintiff suffered acute hepatitis for one month with recurrent modest abnormalities for one to two years, and with some insignificant abnormalities thereafter. He stated that since plaintiff's liver neither shrunk nor enlarged that the prognosis was good and she would not be expected to develop serious problems. However, since this type of hepatitis may result in development of scar tissue or cirrhosis, plaintiff will have to be followed medically, at long intervals. Such a patient may also vacillate from a chronic acute to a chronic persistent condition.
Dr. Luikart stated that plaintiff underwent two liver biopsies which posed a minimal risk to her. The first biopsy was performed March 3, 1983 and it revealed that patient had chronic active hepatitis, mild. A second biopsy did not indicate a worsening of her condition.
As a result of her condition the plaintiff suffered nausea and she felt poorly. However, Dr. Luikart stated that he could not separate her feeling bad as a result of her hepatitis from the pain she experienced from her spinal problems. He also acknowledged that the symptoms of fatigue which plaintiff experienced could have resulted from the medication Inderal which she took for her heart condition.
Dr. Luikart instructed plaintiff to eat well rounded meals, drink plenty of fluid but avoid toxic materials such as alcohol and drugs. She was also told to take vitamins and not exhaust herself. He administered Prednisonne to enhance plaintiffs appetite and this made her feel better.
Dr. Luikart concluded that as of January 1981, plaintiff had abnormal liver function levels which lasted for a month to a month and a half. Thus she had acute hepatitis for one month. He also felt that after September 1981 plaintiffs symptoms were not related to her liver problems.
Dr. Harris Hyman is an internist with a subspecialty in gastroenterology. He stated he first examined the plaintiff in February, 1983. She had experienced 2 years of fluctuating abnormal liver tests and was referred to him for a liver biopsy. The first biopsy revealed chronic active hepatitis with piecemeal necrosis. At this time plaintiff was taking Naprosyn which Dr. Hyman admits could have caused liver dysfunction. The plaintiff did not have cirrhosis of the liver and neither was it nor the spleen enlarged.
In late 1984 plaintiff was admitted to the hospital as a result of intestinal bleeding which could have resulted from the Napro-syn. At this time a second biopsy was performed and it revealed a milder form of hepatitis than existed at the time of the first biopsy.
Although plaintiff may have to be followed medically throughout her life for her hepatitis condition, the prognosis according to Dr. Hyman is optimistic. That is, he testified that there was no progression of the disease, the symptomatology was minimal and the “outlook excellent.” He places no restrictions on the plaintiff of a medical nature or otherwise and no medication was prescribed.
At trial, Marna Shortess testified that she was a 49 year old housewife, volunteer worker and mother of three. She had been married to Judge Melvin Shortess for 20 years and has worked actively in his reelection campaigns.
She was involved in a rear end collision in April 1979 and she sought medical treatment for neck problems. Several months later she began to experience back pain causing her to consult Dr. LaRocca. She underwent surgery for spinal scoliosis in November, 1980, for her low back problems *451 in December, 1982, and for her neck in February 1983.
Mrs. Shortess stated that following her first surgery she was fitted for a brace and began walking around the hospital. Although she experienced pain it did not prevent her from walking, and she was doing quite well.
Plaintiff further stated that around Christmas she began to feel weak, tired and nauseated. She had to rest a lot and she neither felt good nor strong. Her skin and eye whites had turned yellow and her urine was coffee colored. Her symptoms prevented her from standing in the shower in order to place hot water on her incision. Her family was requested to help with many household tasks she formerly performed. She could do some volunteer work, but that which she couldn’t do she would ask others to perform.
Plaintiff visited Dr. Luikart and he recommended fluids, bed rest, starches and carbohydrates as well as walking. Plaintiff stated that she had good days and bad days but by the end of June she was able to try walking and swimming. She stated that she did not feel fairly good until the last 6 months before trial. She does concede that the auto accident accounted to some extent for her gradual diminution of activities.
She stated that she experienced two liver biopsies under local anesthetics and this caused her to be scared. She was especially frightened the second time because she knew what to expect and is very worried about her future because she perceives it as uncertain.
Plaintiff’s husband, Judge Shortess, testified concerning his wife’s condition. He stated that shortly after her first spinal operation she walked in the hospital and at home in the driveway. She was also able to shower. He found her spirits to be good. However, he perceived changes around Christmas of that year when his wife ate very little and she took on a yellowish coloring.
In January, 1981 Mrs. Shortess was found to be suffering from hepatitis. Judge Shortess testified that she was nauseated, vomited, had no energy and was bedridden. She was jaundiced as late as April 15th of that year which was her birthday. Judge Shortess stated that his wife was unable to perform even normal chores. She was in bed a great deal. She tired easily and didn’t feel well so she did not want to engage in activities. As a result, Judge Shortess engaged in grocery shopping and house cleaning. Mrs. Shor-tess no longer camped with her family nor played tennis. She never returned to her normal active lifestyle. Her condition prevented the family from engaging in family activities.
Judge Shortess stated that since January 1985 plaintiff has been feeling a lot better and is more active. She undergoes physical therapy twice a week. She does more housework, almost all the laundry, mopping and heavy cleaning.
Following the trial the judge instructed the jury. In his instruction on the issue of general damages the judge stated:
But in assessing her damages you must be careful to assess damages only (for) the consequence of the contaminated blood and not for the prior condition itself. You must distinguish between suffering due to hepatitis and suffering due to plaintiff’s other medical problems. You may award damages associated only with the hepatitis. [Tr: Yol. IV pp. 175-176]
[[Image here]]
We can only conclude the jury followed these instructions.
Considering the fact that plaintiff suffered acute hepatitis for a period of three weeks and mild hepatitis for six weeks which caused her to be tired and nauseated; that she had elevated liver functions intermittently until 1985; that she was subjected to two liver biopsies and will need to be followed medically at long intervals throughout her life, but for which the prognosis is favorable; and also considering that during this time plaintiff underwent three major spinal operations and was administered various medications which accounted for an unknown amount of her *452 pain, fatigue and discomfort, we cannot say that a jury’s award of $25,000 for general damages to Mrs. Shortess was an abuse of discretion.
In seeking an increase of the general damage award plaintiff compares her situation to that of Mrs. Casey who was awarded the sum of $150,000 for a case of non-A/non-B chronic persistent hepatitis. Casey v. Southern Baptist Hospital, 526 So. 2d 1332 (La.App. 4th Cir., 1988). However, the facts of that case are distinguishable from the present case.
In Casey, supra, the plaintiffs liver function studies were abnormal for at least two years and possibly upward to four years. She was a young mother of a new born and another infant under 2 years of age. The condition rendered her incapable of caring for her children and, unlike this case, the children were too young to care for themselves. This illness resulted in stress being placed on the plaintiff and her husband, who at the time was striving to attain a college education. The mental anguish endured for the duration of the two to four year illness of plaintiff.
In this case Mrs. Shortess suffered from acute hepatitis for two to three months and recurrent symptoms over a period of nine months. Although she had elevated liver functions intermittently for several years, her condition was characterized as mild. Her family members were in their late teens and early twenties and her husband had an established career. This is not to minimize the impact on the Shortess family but merely to point out that there are factors in this case which are significantly different from Casey and which distinguish it from that case.
Finally, plaintiffs argue that an award of $10,000 for special damages is inadequate.
They contend that the $10,000 award can be divided into past and future medical expenses. They reason that since Judge Shortess testified that he incurred $7,212.59 in past medical expenses for his wife’s condition of hepatitis that this left only $2,788 allocated to any future medical expenses she might incur for the rest of her life due to this condition. Thus, they argue this award for medical expenses (especially future medical) is unreasonably low.
The record reveals that Judge Shortess testified that he incurred $7,212.59 in medical expenses due to his wife’s hepatitis. He conceded, however, that this amount of $7,212.59 included a bill of $1,649.17 for his wife’s first biopsy as well as her cervical fusion. He stated he was not expert enough to distinguish which charges were to be allocated solely for the first liver biopsy. He also admitted, on cross examination, that at the time of his wife’s second liver biopsy she had been hospitalized for stomach problems. He conceded that “some of the expenses were definitely for that stomach problem ... I just cannot decipher hospital bills to break out the total expenses and if I could I would.” (Vol. IV pp. 120-121)
As such, the plaintiffs in argument, erroneously assume the sum for past medical expenses was established at trial as being $7,212.59, and that the balance of the $10,-000 was for future medical expenses.
The jury verdict does not disclose what portion of the $10,000 award was allocated to past medical expenses nor what portion constitutes future medical expenses. Plaintiff offered no evidence to establish the anticipated cost of future medical treatment, and we are not allowed to speculate as to those expenses.
Considering Mrs. Shortess’ condition and the expenses actually incurred (to the extent they were proven) and considering her guardedly optimistic prognosis and the expenses which may be incurred, we cannot say that the jury abused its discretion in awarding the sum of $10,000 for past and future medical expenses.
For the reasons assigned the jury award of $25,000 general damages and $10,000 special damages, (i.e., past and future medical expenses) is affirmed. Each party shall bear its own costs.
AFFIRMED.
BARRY, J., dissents with reasons.