|3ROBERT L. LOBRANO Judge Pro Tem.
This case arises from a petition for damages brought by Daniel Boutte, and his wife and children, alleging that Mr. Boutte contracted the Hepatitis C virus from a blood transfusion he received from the respondent, Hotel Dieu Hospital. Appellant, Daniel Boutte, appeals the trial court’s grant of the Appellee, Hotel Dieu’s, exception of prescription. For the following reasons, we reverse and remand to the trial court.

*1189
FACTS AND PROCEDURAL HISTORY

On September 27, 1995, Daniel Boutte was diagnosed with the Hepatitis C virus. Mr. Boutte was told that the likely cause of his Hepatitis C infection was blood transfusions he received from the defendants, West Jefferson Hospital, Charity Hospital, East Jefferson General Hospital, and Hotel Dieu Hospital. The instant case involves only the defendant, Hotel Dieu Hospital, from which Mr. Boutte ^received blood transfusions in December of 1981 and January of 1982. Mr. Boutte filed a Petition for Damages on July 10, 1996, within one year of his diagnosis of Hepatitis C. On October 19, 1998, the trial court granted Hotel Dieu Hospital’s Exception of Prescription.

ISSUE

The issue in the case is whether 1) Mr. Boutte’s claim is a claim under medical malpractice only, and is therefore subject to the special statute of limitations which bars medical malpractice actions which are not filed “within a period of three years from the date of the alleged act, omission, or neglect.” LSA-R.S. 9:5628[1]; or 2) whether Mr. Boutte’s claim is an action in strict liability, which would be subject to the general one year prescription applicable to all delictual actions, and which does not commence to run until the victim knows or should know of the damage. LSA-C.C. art. 3492.[2]

DISCUSSION

Prior to July 15,1981, under Civil Code article 2315, a distributor of blood in Louisiana was strictly liable in tort when the blood he placed on the market created “an unreasonable risk of harm to others and, in fact, resulted in injury or disease to a human being.” DeBattista v. Argonaut-Southwest Ins. Co., 403 So.2d 26 (La.1981). Subsequent to the Supreme Court’s decision in DeBattista, the legislature added Civil Code article 2322.1 and LSA-R.S. 9:2797 granting physicians, hospitals, and blood banks immunity from strict tort liability for the screening, procurement, processing, distribution, transfusion or medical use of blood and blood components.[3] These “blood shield” statutes were declared unconstitutional by the Fourth Circuit Court of Appeal in Casey v. Southern Baptist Hospital, 526 So.2d 1332 (La.App. 4 Cir.1988). However because LSA-R.S. 9:2797 was amended and reenacted by Acts 1982, No. 204, § 1, with an effective date of July 15, 1982[4] the court - limited its findings of unconstitutionality until July 15, 1982. Casey v. Southern Baptist Hospital, 526 So.2d at 1336.[5]
*1190 In the instant case, Mr. Boutte received the blood transfusions from Hotel Dieu Hospital in December of 1981 and January of 1982, prior to the amendment and reenactment of the blood shield statutes.
In Branch v. Willis-Knighton Medical Center, 92-3086 (La.4/28/94), 636 So.2d 211, the Louisiana Supreme Court addressed the issue we now face and concluded that claims of plaintiffs who sustained injury, infection, or disease from contaminated blood prior to the enactment dates of Civil Code article 2322.1 and LSA-R.S. 9:2797 were not barred by the immunities provided by that legislation. The Supreme Court reasoned that:
Those plaintiffs have acquired causes of action in strict tort products liability as vested property rights protected by the guarantee of due process; the statutes enacted after the acquisition of such vested property rights cannot be retroactively applied so as to divest the plaintiffs of their vested rights in their causes of action.
Branch v. Willis-Knighton Medical Center, 636 So.2d at 213 citing, Faucheaux v. Alton Ochsner Medical Foundation Hosp., 470 So.2d 878 (La.1985).
Hotel Dieu argues the reasoning of Walker v. Bossier Medical Center, 30-715 (La.App. 2 Cir. 6/24/98), 714 So.2d 895 for the proposition that Mr. Boutte’s claim is a medical malpractice claim under LSA-R.S. 40:1299.41A(8) and therefore, under the prescriptive period of LSA-R.S. 9:5628, his claim prescribed in 1985. Even though the Walker court found that the plaintiffs claim was based in strict liability, and that strict liability for defects in blood was not abrogated until the enactment of the blood shield statutes, it nevertheless held that any such cause of action filed after the 1976 amendment to LSA-R.S. 40:1299.41A(8), albeit a claim in strict liability, was a medical malpractice action subject to the prescriptive period provided for by LSA-R.S. 9:5628.[6]
| initially we note that the Supreme Court in Branch stated:
The law [R.S. 9:5628] does not apply to strict tort products liability actions arising out of the sale of blood in defective condition unreasonably dangerous to the user or consumer. In fact, R.S. 9:5628 does not contain any provision that expressly or implicitly refers to strict liability or products liability. Instead, the title, “§ 5628 Actions for medical malpractice,” and all of the other earmarks of the statute indicate that the legislature intended to deal only with actions traditionally classified under the generally prevailing meaning of “medical malpractice”viz., suits based on negligence, breach of express agreement, abandonment, assault or lack of informed consent.
Branch v. Willis-Knighton Medical Center, 636 So.2d at 214.
The Walker court attempted to distinguish Branch by noting that the plaintiff in Branch received a blood transfusion prior to 1976 amendments to LSA-R.S. 40:1299.41A(8) and LSA-R.S. 40:1299.39(A)(4) which included “all legal responsibility of a health care provider arising from defects in blood, tissue, transplants, drugs and medicines, or from de *1191 fects in or failures of prosthetic devices, implanted in or used on or in the person of a patient” in the definition of medical malpractice.[7] Thus Walker reasoned that the plaintiffs action had prescribed under LSA-R.S. 9:5628. We decline to follow that holding. The Walker court fails to take into account the Supreme Court’s decision in Faucheaux v. Alton Ochsner Medical Foundation Hosp. and Clinic, 470 So.2d 878 (La.1985), wherein it was held that the plaintiffs cause of action, which occurred in 1981, prior to the |‘Renactment of the blood shield statutes, but after the 1976 amendment to LSA-R.S. 40:1299.41A(8), was an action, not in medical malpractice, but in strict tort liability. Id, 470 So.2d at 878.[8] Thus the 1976 amendment had no effect on the Supreme Court’s reasoning.
Accordingly, we do not find the distinction made in Walker to be persuasive, and hold that the trial court erred in granting the appellee’s exception of prescription.
Mr. Boutte also argues in his brief that LSA-R.S. 9:5628 is unconstitutional as applied to victims of contaminated blood transfusions because of the difference between the public and the private acts. Because of the result we reach, it is not necessary that we consider that argument. Furthermore, it is well established that an attack on the constitutionality of a statute must be pleaded in the trial court and may not be asserted for the first time on appeal. Bellard v. Louisiana Correctional & Indus. School, 95-0157 (La.10/16/95), 661 So.2d 430; Facio v. Glaviano, 95-35 (La.App. 5 Cir. 6/28/95), 658 So.2d 33. Mr. Boutte did not raise this issue in the court below.
For the foregoing reasons, we reverse the trial court’s grant of Hotel Dieu’s Exception of Prescription and remand to the trial court for proceedings consistent with this opinion. Costs of the appeal are assessed equally between the parties.
REVERSED AND REMANDED.

. This court has held that the discovery rule is expressly made inapplicable after three years from an act, omission or neglect in a medical malpractice case. Tassin v. City of Westwego, 95-770 (La.App. 5 Cir. 1/30/96), 668 So.2d 1247, writ denied, 96-0877 (La.5/10/96), 672 So.2d 931, reconsideration denied 96-0877 (La.6/28/96), 675 So.2d 1103.

. This article, added by Acts 1983, No. 173 § 1 incorporates the substance of prior Civil Code articles 3536(1) and 3537(2) of the Louisiana Civil Code of 1870.

. Civil code article 2322.1 was added by Acts 1981, No. 611, § 1, with an effective date of September 11, 1981, LSA-R.S. 9:2797 was added by Acts 1981, No. 311, § 1, with an effective date of July 15, 1981..

. LSA-R.S. 9:2797 and Civil Code article 2322.1 were subsequently amended by Acts 1990, No. 1091,with an effective date of August 15, 1991. For whatever reason, the text of the amended articles is identical.

.To be capable of separate enforcement, the valid portion of an enactment must be independent of the invalid portion and must form a complete act within itself. The law enforced after separation must be reasonable in light of the act as originally drafted. The test is whether the legislature would have passed the statute had it been presented with the invalid features removed. State v. Johnson, 343 So.2d 705 (La.1977). Where the purpose of the statute is defeated by the invalidity of part of the act, the entire act is void. Conversely, when the general object of the act can be achieved without the invalid part, the act will be upheld. Succession of Lauga, 624 So.2d 1156, 1171-1172 (La.1993) citing, State v. Johnson, id.; Roy v. Edwards, 294 So.2d 507 (La.1974); 2 Singer, Sutherland Statutory Construction, Sec. 44.04, (Sands 4th ed., 1986) (citing copious authorities). Because the code provision and the statute were found *1190 to be unconstitutional in their entirety based upon a violation of the reading requirements, these provisions were not enforceable until the time of their amendments.

. LSA-R.S. 9:5628 states:
No action for damages for injury or death against any physician, chiropractor, nurse, licensed midwife practitioner, dentist, psychologist, optometrist, hospital duly licensed under the laws of this state, or community blood center or tissue bank as defined in R.S. 40:1299.41 (A), whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.
Emphasis added

. We particularly note that while in 1976 both the "public” LSA-R.S. 1299.39 and the “private” malpractice acts were so amended, in 1978 the any reference to blood or blood products was deleted from the definition of malpractice in the "public” act. However, because of the result we are reaching in this case, we need not determine the legislature’s intention in that regard.

. While the Supreme Court disposition does not give the date of Mr. Fauchaux’s transfusion; the Court of appeal opinion does. Faucheaux v. Alton Ochsner Medical Foundation Hosp. and Clinic, 468 So.2d 720, 721.