520 So.2d 389 (1988)
Marna B. SHORTESS
v.
TOURO INFIRMARY, et al.
No. 87-C-1943.
Supreme Court of Louisiana.
February 29, 1988.
Rehearing Denied March 31, 1988.
*390 Boris F. Navratil, James E. Toups, Jr., Breazeale, Sachse & Wilson, Baton Rouge, for applicant.
Edward A. Rodrique, Jr., Robert I. Baudouin, Boggs, Loehn & Rodrigue, Harold A. Thomas, Robert D. Ford, Thomas, Hayes & Beahn, New Orleans, Paul H. Dué, Dué, Smith & Caballero, Baton Rouge, for respondents.
WATSON, Justice.
The questions presented are: (1) whether a hospital is liable for a 1980 sale of defective blood even though the contaminating hepatitis virus could not have been detected by testing; (2) whether prescription was interrupted against the blood center which supplied the blood; and, if so, (3) whether the blood center is liable.

FACTS
On November 26, 1980, plaintiff, Marna B. Shortess, underwent a surgical procedure at Touro Infirmary in which her spine was fused and a Harrington Rod was inserted to correct severe scoliosis. During the surgery, Marna was given five units of packed red blood cells which were contaminated with hepatitis virus resulting in chronic hepatitis and damage to her liver.
A claim against Touro was filed with a medical review panel on December 21, 1981. Over a year later, on December 22, 1982, Touro revealed that the five units of blood had been purchased from the Blood Center for Southeast Louisiana, Inc. After the medical review panel rejected Marna's claim against Touro on March 9, 1983, this suit was filed against Touro Infirmary and the Blood Center on May 31, 1983. The trial court granted Touro a directed verdict on the ground that it did not prepare the tainted blood and no negligence had been established. The jury returned verdicts against the remaining defendants, the Blood Center for Southeast Louisiana, Inc. and St. Paul Fire and Marine Insurance Company, awarding $25,000 to Marna Shortess and $10,000 to her husband.[1]
The Blood Center filed a peremptory exception of prescription in the Court of Appeal which was sustained. The Court of Appeal also dismissed plaintiffs' suit against Touro holding that Touro was not a manufacturer and could not have known the blood was defective.[2] A writ was granted to review the judgment.[3]
Touro Infirmary maintains a blood bank. At the time of this surgery, Touro obtained blood from donors, which it processed and tested. However, Touro obtained the larger portion of its blood from the Blood Center for Southeast Louisiana. The cards attached to the five units of blood administered to Marna show that they were cross matched by a Touro employee. Touro's patients had no way of knowing the source of their transfused blood, which could only be discovered by tracing serial numbers through Touro's card files. All patient charges for blood were through Touro, which also accepted blood donors for credit on the patient's Touro Infirmary Blood Bank account.
The Blood Center for Southeast Louisiana is a nonprofit organization which is affiliated with the American Association of Blood Banks and follows their certification and inspection procedures. It does not use paid donors. The blood is tested for hepatitis "B". An unknown agent causes hepatitis non-A/non-B, which Marna Shortess contracted. There is no test for this type *391 of hepatitis. Many of the carriers of non-A/non-B are asymptomatic and unaware that they are carriers. Ninety to ninety-five percent of all post-transfusion hepatitis is non-A/non-B.[4]
The Blood Center for Southeast Louisiana has a federal manufacturer's license to manufacture and prepare whole human blood for sale. The blood given Ms. Shortess had been treated to make red packed cells.
Following surgery, Marna Shortess initially had a good recovery. She then became weak and ill with nausea, fatigue and loss of appetite. On January 10, 1981, after she had developed severe jaundice, she saw a gastroenterologist. Testing on January 8th had revealed that she did not have hepatitis "A" or hepatitis "B" but had non-A/non-B hepatitis. The gastroenterologist said the most probable conclusion was that the non-A/non-B hepatitis was caused by the transfusion. Marna's acute condition lasted about three weeks. Later, she had a recurrence, which is characteristic of non-A/non-B hepatitis, and further recurrences. After two needle biopsies of her liver, she was diagnosed as having either chronic active hepatitis, mild, or chronic persistent hepatitis. Chronic active hepatitis may lead to cirrhosis of the liver. There is piecemeal necrosis in Marna's liver. Because non-A/non-B is a new and mysterious form of hepatitis, the prognosis is guarded. Marna's first normal liver function test was on July 3, 1985.

LIABILITY OF TOURO
Touro Infirmary sold five units of blood to Marna Shortess, which were contaminated with non-A/non-B hepatitis. "A distributor of blood is strictly liable in tort when blood he places on the market creates an unreasonable risk of harm to others and, in fact, results in injury or disease to a human being." DeBattista v. Argonaut-Southwest Ins. Co., 403 So.2d 26 at 32 (La.1981). Touro is liable for the hepatitis disease contracted by Marna Shortess.[5]
After remand,[6]Weber v. Charity Hospital of La. at New Orleans, 487 So.2d 148 (La.App. 4 Cir.1986) held that Charity Hospital, which administered blood in a closed system, charging for the blood and the service, was not strictly liable for defects in the blood. Weber is contrary to DeBattista, supra; Toups v. Sears Roebuck and Co., Inc., 507 So.2d 809 (La.1987); Faucheaux v. Alton Ochsner Medical Foundation, 470 So.2d 878 (La.1985); and Chappuis v. Sears Roebuck & Co., 358 So.2d 926 (La.1978). The responsibility of a professional vendor or distributor is the same as that of a manufacturer. The Court of Appeal opinion in Weber is overruled.

PRESCRIPTION AND LIABILITY OF BLOOD BANK
This cause of action arose on January 10, 1981, when Marna Shortess was advised she had contracted transfusion hepatitis. A claim against Touro was filed with a medical review panel on December 21, 1981, but suit was not filed until May 31, 1983. Prescription against a qualified health care provider, such as Touro, is interrupted during the deliberations of a medical review panel. LSA-R.S. 40:1299.47, subd. A.[7] This medical review panel did *392 not render its decision until March 9, 1983. Suit was timely filed against Touro within ninety days. However, the Blood Center for Southeast Louisiana, Inc., is not a qualified health care provider. Under LSA-R.S. 40:1299.41(D),[8] as interpreted in Ferguson v. Lankford, 374 So.2d 1205 (La.1979), the timely claim against Touro did not interrupt prescription against the Blood Center.
Plaintiffs urge the application of "contra non valentem agere nulla currit praescriptio", i.e., prescription does not run against a person unable to bring an action. Since one is not bound to do the impossible, a party excusably ignorant of a claim is not barred by prescription. 5 Civil Law Translations at p. 465. The doctrine is discussed at length in Plaquemines Par. Com'n Council v. Delta Dev., 502 So.2d 1034 at 1054 (La.1987).
Excusable ignorance exists when "the cause of action is not known or reasonably knowable." Plaquemines, supra, at p. 1056. Corsey v. State Dept. of Corrections, 375 So.2d 1319 (La.1979); Penn v. Inferno Manufacturing Corporation, 199 So.2d 210 (La.App. 1 Cir.1967), writ den. 202 So.2d 649.
In sustaining the Blood Center's exception of prescription, the Court of Appeal stated that: "... the identity of the blood supplier was readily discernable from the records of the hospital."[9] This statement is misleading. Marna Shortess' medical records do not reveal that the blood administered to her came from any source other than the Touro Infirmary blood bank, which cross-matched the blood, and billed her for it. Because Marna Shortess did not know the transfused blood had been purchased from the Blood Center, she was unable to bring suit against that party. "[P]rescription does not run against one who is ignorant of the existence of facts that would entitle him to bring a suit, when such ignorance is not wilful and does not result from negligence. Simply because these facts may have been obtained at a particular place or in a particular manner, and the plaintiffs did not happen to make a search in that particular place and especially since they had never been put on notice and were wholly ignorant of the existence in any place of the facts upon which to base an action, this Court does not think their ignorance is wilful nor the result of any negligence on their part." Walter v. Caffall, 192 La. 447, 188 So. 137 at 143 (1939).
Not only were plaintiffs unaware that the Blood Center furnished the blood, the Blood Center itself, in answer to Touro's request for admissions on April 14, 1986, claimed insufficient information known or readily obtainable for the Blood Center to admit furnishing Marna's blood.
Since plaintiffs could not have reasonably known the source of the blood represented to be Touro's until Touro's revelation on December 22, 1982, suit against the Blood Center on May 31, 1983, was timely. It was filed within three years of the November 26, 1980, operation. LSA-R.S. 9:5628.[10]
*393 The blood bank is liable for damages sustained by the plaintiff and intervenor under the DeBattista rationale.

DAMAGES
Since the Court of Appeal did not review the damages, the matter is remanded to the Court of Appeal for appellate review of the damages awarded by the jury.

DECREE
For the foregoing reasons, the judgment is reversed. Judgment is granted in favor of Marna Shortess and Melvin Shortess and against Touro Infirmary and the Blood Center for Southeast Louisiana, Inc., jointly and in solido, for damages sustained, and the case is remanded to the Court of Appeal for review of the damages. Defendants are cast for all costs.
REVERSED AND REMANDED.
LEMMON and MARCUS, JJ., dissent and assign reasons.
LEMMON, Justice, dissenting.
I agree with the majority, although not necessarily for the same reasons, that the exception of prescription should have been overruled. Nevertheless, I adhere to the view expressed in my dissenting opinion in DeBattista that the risk of harm in blood furnished for transfusions, when balanced against the benefits derived from the use of the blood, does not render the blood so unreasonably dangerous as to warrant imposition of strict liability. Liability in such cases, if imposed, should be based on failure to obtain informed consent.
MARCUS, Justice (dissenting).
In my view, Touro Infirmary is not liable and the action has prescribed against the Blood Center. Accordingly, I respectfully dissent.
NOTES
[1] Melvin Shortess intervened after suit was filed to recover his wife's medical expenses.
[2] Shortess v. Touro Infirmary, 508 So.2d 938 (La.App.4 Cir.1987).
[3] 513 So.2d 1198 (La.1987).
[4] According to a defense proffer, the hepatitis of Marna Shortess was reported to the Blood Center; questionaires were then sent to the donors; none reported any illness and three of them subsequently donated blood.
[5] Louisiana, together with virtually every jurisdiction in the United States, now immunizes hospitals and blood banks from implied warranty and strict liability for transmission of undetectable diseases. Generally, blood transfusions are characterized as services rather than sales. See LSA-R.S. 9:2797; Roberts v. Suburban Hospital, 532 A.2d 1081 (Md.App.1987); and Kozup v. Georgetown University, 663 F.Supp. 1048 (D.D.C.1987).
[6] Weber v. Charity Hospital of Louisiana, 475 So.2d 1047 (La.1985).
[7] LSA-R.S. 40:1299.47, subd. A provides in pertinent part:

"(2)(a) The filing of the request for review of a claim shall suspend the time within which suit must be instituted, in accordance with this Part, until ninety days following notification, by certified mail, as provided in Subsection J of this Section, to the claimant or his attorney of the issuance of the opinion by the medical review panel, in the case of those health care providers covered by this Part, or in the case of a health care provider against whom a claim has been filed under the provisions of this Part, but who has not qualified under this Part, until sixty days following notification by certified mail to the claimant or his attorney by the Commissioner that the health care provider is not covered by this Part."
[8] LSA-R.S. 40:1299.41, subd. D provides:

D. A health care provider who fails to qualify under this Part is not covered by the provisions of this Part and is subject to liability under the law without regard to the provisions of this Part. If a health care provider does not so qualify, the patient's remedy will not be affected by the terms and provisions of this Part, except as hereinafter provided with respect to the suspension and the running of prescription of actions against a health care provider who has not qualified under this Part when a claim has been filed against the health care provider for review under this Part."
[9] 508 So.2d 938 at 943.
[10] LSA-R.S. 9:5628 provides:

"A. No action for damages for injury or death against any physician, chiropractor, dentist, or hospital duly licensed under the laws of this state, whether based upon tort, breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission or neglect, or within one year from the date of discovery of the alleged act, omission or neglect; provided, however, that even as to claims filed within one year from the date of such discovery, in all events such claims must be filed at the latest within a period of three years from the date of the alleged act, omission or neglect.
"B. The provisions of this Section shall apply to all persons whether or not infirm or under disability of any kind and including minors and interdicts."