607 So.2d 883 (1992)
Jerry Wayne BRANCH, et ux, Plaintiffs-Respondents
v.
WILLIS-KNIGHTON MEDICAL CENTER, Defendant-Relator.
No. 24175-CW.
Court of Appeal of Louisiana, Second Circuit.
October 28, 1992.
*884 Nelson & Hammons by John L. Hammons, Shreveport, for plaintiffs-respondents.
Mayer, Smith & Roberts by Caldwell Roberts, Jr., Shreveport, for defendant-relator.
Before MARVIN, HIGHTOWER, VICTORY, BROWN and STEWART, JJ.
STEWART, Judge.
Jerry Wayne Branch and his wife, Gnever M. Branch, filed suit against Willis-Knighton Medical Center in September 1990, alleging that Mr. Branch contracted hepatitis from blood administered to him while he was hospitalized at Willis-Knighton from June 19, 1976 through August 4, 1976. The plaintiffs alleged that Mr. Branch sought medical care in late August or early September 1989, and that following a liver biopsy performed on or about September 6, 1989, Mr. Branch was advised by a physician that he might be suffering from hepatitis.
Willis-Knighton filed a peremptory exception of prescription which was denied by the trial court. We then granted a writ of certiorari to review the denial of the exception. For the reasons which follow, we reverse the judgment of the trial court, holding that under the provisions of LSA-R.S. 9:5628, plaintiffs' action is untimely.

APPLICATION OF THE PROVISIONS OF LSA-R.S. 9:5628
The pertinent provision of LSA-R.S. 9:5628 states:
No action for damages for injury or death against any ... hospital duly licensed under the laws of this state ... whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.
The statute, with its three-year outside limit on filing claims, was enacted prior to the time Mr. Branch received blood from Willis-Knighton. Accordingly, the hospital, which is "duly licensed under the laws of this state", argues that the plaintiffs' claims are prescribed because they are filed more than three years from the time Mr. Branch received the allegedly contaminated blood.
On the other hand, plaintiffs argue that they have stated a cause of action in products *885 liability. The plaintiffs' petition clearly attempts to state a claim in products liability, asserting that the hospital is liable to plaintiffs for harm suffered as a result of "the sale and administration of the defective product, i.e., contaminated blood." The plaintiffs rely on DeBattista v. Argonaut-Southwest Insurance Company, 403 So.2d 26 (La.1981), in which the Louisiana Supreme Court concluded that blood contaminated with hepatitis virus was defective, and that the blood bank which distributed the contaminated blood was liable in tort under the provisions of LSA-C.C. Art. 2315.
Although DeBattista was overruled legislatively in 1981 by the provisions of LSA-R.S. 9:2797 and LSA-C.C. Art. 2322.1, which define distribution and transfusion of blood as medical services not subject to strict liability or warranties of any kind without negligence, plaintiffs point out that in Faucheaux v. Alton Ochsner Medical Foundation Hospital and Clinic, 470 So.2d 878 (La.1985), the Louisiana Supreme Court held that the legal provisions overruling DeBattista could not be applied retroactively. Thus, plaintiffs argue that the proper prescriptive period in this case is one year under the provisions of LSA-C.C. Art. 3492, which establish a liberative prescription of one year for tort actions, including liability without negligence. See LSA-C.C. Art. 3492, Comment (b).
Because plaintiffs argue that the one-year prescription in tort applies, they further argue that instead of the three-year outside limit of 9:5628 being applicable to their claims, the tolling effect of the principle of contra non valentem agere nulla currit prescriptio has application. This legal principle, under which prescription does not run against a person unable to bring an action, is argued to be applicable because Mr. Branch allegedly did not discover that his medical problems resulted from the blood transfusion until less than one year from the date suit was filed.
Generally, one set of factual circumstances can give rise to more than one cause of action, with each cause of action having its own prescriptive period. See Jackson v. Zito, 314 So.2d 401 (La.App. 1st Cir.1975). Therefore, if the provisions of 9:5628 (entitled "Actions for medical malpractice") simply used the term "medical malpractice claims" when establishing time limits, a claim for products liability arguably might be unaffected. However, the actual wording of 9:5628, which is both plain and unambiguous, renders such an argument unpersuasive in this case.
As previously mentioned, under the provisions of 9:5628 no action for damages for injury or death, arising out of patient care, whether based upon tort, or breach of contract, or otherwise, can be brought against the listed health care providers more than three years from the date of the alleged act, omission, or neglect. Without question, plaintiffs' action falls within the broad language of the statute. Plaintiffs' action is based upon tort, but even if the action could escape this categorization, it still would fall within the broad residual category "or otherwise".[1] The intent of the legislature in fashioning such broad language was to establish a statute of limitations which applies to actions seeking *886 damages for injury or death "arising out of patient care", regardless of the underlying legal theory of recovery. Furthermore, the discovery aspect of the doctrine of contra non valentem does not apply in such cases when the action is brought more than three years from the date of the alleged act, omission, or neglect. See Dunn v. North Community Hospital, 545 So.2d 1267 (La.App.), writ denied, 550 So.2d 633 (La.1989).
We also observe that this is not a case in which the alleged act arguably does not arise out of patient care. While the legislature did not intend to subject health care providers to liability for all defective things in their custody which cause injury to a patient, Sewell v. Doctors Hospital, 600 So.2d 577 (La.1992), we hold that the legislature did intend for actions subject to the time limitations of 9:5628 (i.e. those "arising out of patient care") to include those instances in which treatment directly involves defective things that cause injury to patients.[2] Accordingly, even though the transfusion of contaminated blood involves a defective product under DeBattista, supra, the blood used in the transfusion plainly is related directly to treatment and is subject to the provisions of 9:5628.
Finally, we observe that similar factual circumstances were presented in Shortess v. Touro Infirmary, 520 So.2d 389 (La.1988), in which the plaintiff received blood contaminated with hepatitis during a transfusion occurring in November 1980. As in the instant case, the transfusion took place prior to the legislative overruling of DeBattista, supra. In finding that the plaintiffs' May 1983 lawsuit was timely against the blood center that sold the contaminated blood, the court observed that the plaintiffs reasonably could not have known that the blood center was the source of the blood until December 1982. By citing the three-year limit of 9:5628 in relation to the 1980 blood transfusion, Shortess indicates: (1) the provisions of 9:5628 apply to blood transfusions occurring before the legislative overruling of DeBattista; (2) the discovery aspect of contra non valentem applies within the three-year limit; and (3) the discovery aspect of contra non valentem does not apply, even in otherwise valid actions based on defective blood, when such actions are brought outside the three-year limit.

CONCEALMENT OF THE DEFECT
Plaintiffs also have suggested that the defendant legally is presumed to have concealed the defect in the blood from plaintiff, and that the actions of defendant in knowingly selling and administering defective blood without revealing the contamination constitutes fraud and ill practices which act as an exception to the three-year outside limit of 9:5628.
We have recognized that an action might be brought outside the three-year limit of 9:5628 in cases involving intentional concealment. See Dunn, supra. Nevertheless, whether such an "exception" exists as an application of contra non valentem, as an application of estoppel, or as a separate, intentional tort, no such "exception" has application under the facts of the instant case.
Plaintiffs' argument concerning defendant's knowledge is based on the legal presumption in products liability that a manufacturer is presumed to know the vices in the thing he makes. Thus, plaintiffs argue that Willis-Knighton should be presumed to have known at the time of the sale that the blood was contaminated and was defective.
In Weber v. Fidelity and Casualty Insurance Company of New York, 259 La. 599, 250 So.2d 754 (1971), the court held that if a product is proven defective by reason of its hazard to normal use, the plaintiff does not need to prove any particular negligence by the maker in the product's manufacture or processing:
for the manufacturer is presumed to know of the vices in the thing he makes, whether or not he has actual knowledge of them. [Emphasis added.]
*887 On the other hand, it is actual knowledge of medical malpractice, and the intentional concealment thereof, that may allow a plaintiff to bring an action outside the three-year limit of 9:5628. Because there is no allegation or indication of actual knowledge on the part of Willis-Knighton concerning contamination of the blood at issue, there is no need for this court to resolve herein the issue of what circumstances, if any, would allow a plaintiff to bring an action against a duly licensed hospital, arising out of patient care, more than three years after the alleged act, omission, or neglect. We hold that the presumed knowledge of a manufacturera legal fiction designed to ease the plaintiff's burden in a products liability casecannot substitute for the actual knowledge required before any "exception" to the three-year outside limit of 9:5628 might apply.

THE EXERCISE OF SUPERVISORY JURISDICTION
Finally, we note that plaintiffs object to our exercise of supervisory jurisdiction in this case, and request we reconsider our writ grant. Under the provisions of URCA 2-18.7, an application for a rehearing will not be considered when the court merely has granted a supervisory writ. Furthermore, the factors set forth in Herlitz Construction Company, Inc. v. Hotel Investors of New Iberia, Inc., 396 So.2d 878 (La.1981), are satisfied in this case, unlike the matters referred to by plaintiffs in which pertinent facts were disputed.

CONCLUSION
For the reasons set forth above, we hold that the trial court erred in overruling defendant's peremptory exception of prescription. Accordingly, the trial court's decision is reversed, and the case is dismissed. Costs of appeal shall be borne by plaintiffs.
REVERSED.
BROWN, J., dissents with written reasons.
BROWN, Judge, dissenting.
The Louisiana Medical Malpractice Act was enacted in 1975. LSA-R.S. 40:1299.41-40:1299.48. The prescription statute in question, LSA-R.S. 9:5628, is titled "Actions for Medical Malpractice" and also was enacted in 1975. In 1976 when Branch was given the transfusion the law in effect was as stated in DeBattista v. Argonaut-Southwest Insurance Co., supra. In DeBattista the supreme court found that blood contaminated with hepatitis virus was defective, i.e., unreasonably dangerous to normal use and that "the risk involved in receiving a transfusion of blood in this condition are certainly greater than a reasonable consumer would expect." Although finding no negligence on the part of the hospital and its blood bank the supreme court found them strictly liable in tort. The legislature immediately overruled the supreme court decision and provided immunity to health care providers from this type of strict liability. However, the Louisiana Supreme Court in Faucheaux v. Alton Ochsner Medical Foundation Hospital & Clinic, supra, ruled that this legislation could not be applied retroactively.
DeBattista involved a blood transfusion that occurred in 1973, which was approximately two years before the enactment of the Medical Malpractice Act and 9:5628. However, in Shortess v. Touro Infirmary, 520 So.2d 389 (La.1988), the DeBattista rationale was applied for a transfusion that occurred in 1980. In a footnote in the recent decision, Sewell v. Doctors Hospital, 600 So.2d 577 (La.1992), the supreme court stated:
5La.Rev.Stat. 40:1299.41 was originally enacted in 1975, at a time when health care providers were strictly liable for medical use of defective blood and possibly tissues and organs. DeBattista v. Argonaut-Southwest Insurance Co., 403 So.2d 26 (La.1981). La.Civ.Code art. 2322.1, purporting to provide immunity to health care providers from certain strict liability, was added in 1981.
Therefore, since the incident giving rise to this action occurred in 1976, it is governed *888 by the law pronounced in DeBattista.
In Sewell, supra, the supreme court stated:
The Legislature originally defined malpractice principally as any unintentional tort based on health care or professional services which were rendered or should have been rendered by a health care provider to a patient, clearly indicating an intent to include liability in negligence for all acts and omissions by a health care provider during the furnishing of medical care or treatment or the confinement of a patient. However, the Legislature further defined malpractice to "also include [ ]" a health care provider's strict liability for some injury-causing defective things, specifically enumerating defective blood, [added in 1981] ... used during the course of the patient's treatment. Clearly, the Legislature did not intend to include liability for all defective things in the custody of the provider which caused injury to a patient. By including liability for all negligent acts or omissions by a health care provider in providing care and services and for only those defective things which are specifically enumerated, the Legislature intended to exclude from the definition of malpractice a health care provider's strict liability for other defective things, unless negligence by the health care provider caused the thing to be defective or unreasonably dangerous. [footnotes omitted]
In 1976, as interpreted in DeBattista, supra, and Shortess, supra, blood was not one of "those defective things which are specifically enumerated" and therefore, excluded from the definition of malpractice. If Willis-Knighton had been sued for the procedure used in administering the blood, that would have arisen out of patient care and constituted malpractice; however, it is for the production or manufacturing of a defective thing, i.e., contaminated blood, for which the hospital is being sued and in 1976 that was not included in the definition of malpractice. In Faucheaux, supra, the supreme court found that because the blood distribution occurred prior to the 1981 amendments, plaintiff "... acquired a cause of action in strict liability under Civil Code Article 2315 which is a vested property right protected by the guarantee of due process." (emphasis added).
In summary, if Branch was suing under medical malpractice his action has prescribed. However, Branch acquired a cause of action in strict liability under Civil Code Article 2315 per DeBattista which became a vested right protected by the guarantee of due process. Faucheaux, supra.
Accordingly, LSA-R.S. 9:5628, which was enacted in 1975 in conjunction with the Medical Malpractice Act, is applicable to claims against a health care provider arising out of patient care and classified as medical malpractice. In the present case, plaintiff's action is based solely on strict liability for a defective thing as set forth in DeBattista and is subject to the prescriptive period provided for such actions. The appropriate prescriptive period as provided by LSA-C.C. Art. 3492 is subject to the doctrine of contra non valentem. Under the facts as presented in this motion, Branch could not have known about his cause of action until at least September 6, 1989, when he was advised that he might be suffering from hepatitis and that the virus would have been contracted through a blood transfusion. Accordingly, Branch's suit was timely filed within one year from the date of discovery in accordance with the principle of contra non valentem.
Thus, I must dissent from the majority opinion.
NOTES
[1] The divisions of "tort", "breach of contract" and "otherwise" found in 9:5628 roughly correspond to the divisions in the definition of malpractice found in LSA-R.S. 40:1299.41(A)(8), part of the Louisiana Medical Malpractice Act. The provisions of the latter statute state in pertinent part:

"Malpractice" means any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, ... and also includes all legal responsibility of a health care provider arising from defects in blood, tissue, transplants, drugs and medicine, or from defects in or failures of prosthetic devices, implanted in or used on or in the person of a patient.
The original definition of malpractice found in Act 817 of 1975 simply referred to "any tort or breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient." Nevertheless, products liability is a subdivision of tort, and, reading the broad language of 9:5628 in pari materia, we consider the definition's subsequent reference to responsibility for particular defects to clarify, if not restrict, the scope of the definition of malpractice.
[2] See the provisions of LSA-R.S. 40:1299.41(A)(8) at footnote 1 which enumerate those defective things for which a health care provider has legal responsibility.