857 So.2d 529 (2003)
Rocky Wayne DAVID
v.
OUR LADY OF THE LAKE HOSPITAL, INC.
No. 2002 CA 1945.
Court of Appeal of Louisiana, First Circuit.
June 27, 2003.
Rehearing Denied August 25, 2003.
*530 Keith Jones, Baton Rouge, Counsel for Plaintiff/Appellee Rocky Wayne David.
Erick Y. Miyagi, Baton Rouge, Counsel for Defendant/Appellant Our Lady of the Lake Hospital, Inc.
Before: FITZSIMMONS, GUIDRY, and PETTIGREW, JJ.
GUIDRY, J.
In this strict products liability action, defendant, Our Lady of the Lake Hospital, Inc. (OLOL), appeals the trial court's judgment in favor of plaintiff, Rocky Wayne David. For the reasons that follow, we affirm.

FACTS AND PROCEDURAL HISTORY
In August of 1979, David was admitted to OLOL to undergo surgery to remove kidney stones. Following the surgery, on August 16, 1979, David received a blood transfusion. The blood for the transfusion was provided to David by OLOL pursuant to an order from David's treating physician. Thereafter, in February of 1998, David applied for a life insurance policy, whereupon he submitted to a series of tests and blood work. As a result of these tests, David discovered that his liver enzymes were elevated, and later, that he had hepatitis C.
On February 10, 1999, David filed a petition for damages, alleging that OLOL sold defective blood to him. Thereafter, on September 15, 2000, OLOL filed a peremptory exception raising the objection of prescription. A hearing on the exception was held on November 13, 2000, whereupon the trial court denied OLOL's exception.[1] A trial on the merits was held on *531 May 30, 2002. In a judgment rendered in open court on July 15, 2002, and signed on August 7, 2002, the trial court found in favor of David and awarded damages in the amount of $2,319,500.00. OLOL now appeals this judgment, and asserts as error: the trial court's finding of strict liability against OLOL, the trial court's failure to apply the comment k defense found in the Restatement (Second) of Torts § 402A, the trial court's failure to find that OLOL met its burden in establishing the requisite elements of the comment k defense, and the trial court's award of $2,319,500.00 in damages.[2]

DISCUSSION
Strict Liability
In DeBattista v. Argonaut-Southwest Insurance Company, 403 So.2d 26, 31-32 (La.1981), the Louisiana Supreme Court recognized health care providers' exposure to strict products liability claims arising out of defective blood transfusions, reasoning that "[a] distributor of blood is strictly liable in tort when blood he places on the market creates an unreasonable risk of harm to others and, in fact, results in injury or disease to a human being." With this decision, Louisiana became one of the handful of states that imposed strict liability on hospitals for defective blood transfusions. Williams v. Jackson Parish Hospital, 00-3170, p. 5 (La.10/16/01), 798 So.2d 921, 925; see also Shortess v. Touro Infirmary, 520 So.2d 389 (La.1988).
The record evidences that at the time David received his blood transfusion, while hepatitis C was not known to exist at the time, OLOL was aware of the risk that blood contained a non-A/ non-B hepatitis virus. Thereafter, in 1998, David discovered that he had hepatitis C. David's treating physician, Dr. Mark Anderson, indicated that the only risk factor David exhibited for hepatitis C was the blood transfusion he received in 1979. As such, we find no error in the trial court's determination that David contracted hepatitis C from the defective blood purchased from OLOL in 1979.
However, OLOL contends on appeal that based on comment k to the Restatement (Second) of Torts § 402A, it presented a defense to David's claim for strict liability. Comment k to the Restatement (Second) of Torts § 402A, entitled "unavoidably unsafe products" states:
There are some products, which in the present state of human knowledge, are quite incapable of being made safe for their intended and ordinary use.... Such a product, properly prepared, and accompanied by proper directions and warning, is not defective, nor is it unreasonably dangerous.... The seller of such products, again with the qualification that they are properly prepared and *532 marketed, and proper warning is given, where the situation calls for it, is not to be held to strict liability for unfortunate consequences attending their use, merely because he has undertaken to supply the public with an apparently useful and desirable product, attended with a known but apparently reasonable risk.
In its reasons for judgment, the trial court stated that it found the blood at issue in the instant case was not unavoidably unsafe, and that comment k to the Restatement (Second) of Torts was not applicable to this case. While we disagree that comment k is not applicable to the instant case, we do find that based on the facts and circumstances as contained in the record, that the trial court was reasonable in finding that the blood at issue was not unavoidably unsafe.
In Seal v. St. Tammany Parish Hospital Service District No. 1, 00-1489 (La.6/30/00), 765 So.2d 1057, the supreme court reversed a judgment of this court wherein the comment k defense was used to grant summary judgment in favor a defendant, dismissing plaintiff's cause of action for strict liability. In reversing this court, the supreme court adopted the reasons assigned by Judge Weimer in his dissenting opinion, which stated in part that "the plaintiffs are entitled to submit their case based on a theory of strict liability and the defendants are entitled to present a defense relative to whether a blood transfusion, given in 1973, which is alleged to be the cause of plaintiff's Hepatitis C, was `unavoidably unsafe.'" Seal, 00-1489, 765 So.2d 1057.
Following the supreme court's decision in Seal, the fourth circuit court of appeal, in Chauvin v. Sisters of Mercy Health System, St. Louis, Inc., 01-1834, pp. 10-12 (La.App. 4 Cir. 5/8/02), 818 So.2d 833, 840-841, writ denied, 02-1587 (La.9/30/02), 825 So.2d 1194, applied the "unavoidably unsafe" defense from comment k to a plaintiff's claim against a hospital for her contraction of hepatitis C from a 1963 blood transfusion. The court in Chauvin relied on four criteria for determining whether a blood product is unavoidably unsafe, and therefore, not unreasonably dangerous: (1) the nonexistence of any scientific test capable of detecting the viral agent which contaminated the blood at the time of injury; (2) the great utility of the product; (3) the lack of any substitute for the product; and (4) the relatively small risk of the disease being transmitted by the product. Chauvin, 01-1834 at 11, 818 So.2d at 840. The court in Chauvin further emphasized that not only was there no test in 1963 capable of detecting the viral agent, but that the existence of the viral agent itself, hepatitis C, was unknown at that time.[3]Chauvin, 01-1834 at 11, 818 So.2d at 840.
While we recognize that we are not bound by the fourth circuit's decision, we find that, in light of the supreme court's pronouncement in Seal, and the similar facts as contained in the record of the instant appeal, it was error for the trial court to find that the comment k defense did not apply to the instant case. However, based on the trial court's further analysis of the "unavoidably unsafe" comment k defense criteria, we find that this error of law did not interdict the fact-finding process, and therefore a de novo review is not warranted. See Evans v. Lungrin, 97-0541, 97-0577 pp. 6-7 (La.2/6/98), 708 So.2d 731, 735. As such, based on our review of the record before us, we do not *533 find that the trial court manifestly erred in determining that OLOL did not establish the requisite elements of the comment k defense so as to warrant the finding that the blood at issue was unavoidably unsafe.
As outlined previously, a predicate to the application of the "unavoidably unsafe" comment k defense, is that the product was properly prepared and was accompanied by proper warning. Rest. (Second) Torts, Sec. 402A, comment k. At trial, the only evidence admitted as to the collection and preparation of the blood in the OLOL blood bank was the testimony of Dr. Jack Holden, the head of the pathology department in 1979. Dr. Holden testified to the fact that the blood donors were interviewed, using a prepared list of questions, and that other factors, such as the physical appearance of an individual, whether the donor was a known past donor, and the interviewer's feelings about the donor were also considered. However, the trial court specifically found Dr. Holden not to be a credible witness based on the gratuitous statements rife throughout his testimony. Because no other testimony from OLOL personnel or evidence of blood donor records/questionnaires was admitted into evidence at trial, we find no error in the trial court's determination that OLOL failed to prove that it properly screened (prepared) the blood transfused to David, and therefore failed to meet its burden in establishing a comment k defense.
Damages
OLOL also contends on appeal that the amounts awarded for past and future earning capacity, past and future mental pain and suffering, and past and future emotional distress, including fear of cancer and loss of enjoyment of life, constitute an abuse of the trial court's discretion. However, before an appellate court can disturb an award made by a trial court, the record must clearly show that the trier of fact abused its much discretion in making the award. The initial inquiry is whether the trial court's award for the particular injury to the particular plaintiff under the particular circumstances was a clear abuse of the trial court's discretion. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), cert denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).
According to the record before us, we do not find that the trial court abused its discretion in awarding $197,000.00 for loss of past and future earning capacity to David. A loss of earning capacity award is not predicated merely upon the difference between a plaintiff's earnings before and after a disabling injury, but also encompasses the loss of one's earning potential or capacity, that is the loss or reduction of a person's capability to do that for which he is equipped, by nature, training, and experience. Thibodeaux v. USAA Casualty Insurance Company, 93-2238, p. 15 (La.App. 1st Cir.11/10/94), 647 So.2d 351, 360. While no expert was called to testify as to David's earning capacity, David and his treating physicians testified as to the probable effects of his disease on his future ability to work. At the time of trial, David was 52 years old. David's treating physicians, in particular, Dr. Anderson, testified that at some point, David's liver disease will progress to decompensated cirrhosis and he will no longer be able to work a full day. Further, the doctors testified that the progressed cirrhosis would likely result in decreased mental functioning, which would preclude David from working as a pharmacist. David testified that he has no disability insurance or other means of income if he were unable to work. The evidence shows that at the time of trial, David was earning approximately $76,000.00 per year. Therefore, in light of this evidence, we do not find that *534 the trial court abused its discretion in awarding $197,000.00 for loss of past and future earning capacity.
Additionally, based on our review of the record, we do not find that the trial court abused its discretion in awarding $632,000.00 for past and future mental pain and suffering and $895,000.00 for past and future emotional distress, including fear of cancer and loss of enjoyment of life. David testified at trial that he suffered insomnia and fatigue as result of the hepatitis C. David further stated that at times, the insomnia was so bad that he would be unable to sleep for three to four days at a time. Additionally, David stated that he cannot engage in sporting activities with his sons because he was too tired, and that he has not attempted to engage in a relationship with anyone because, due to his condition and prognosis, he does not feel that it would be fair to that person.
David's treating physician, Dr. Anderson, stated that David is a high risk patient because he has not responded to the treatments thus far. Additionally, Dr. Anderson stated that he expects David's life prognosis to be determined by his liver disease, and that he expects David to die of complications of his hepatitis C if he does not undergo a transplant or have a sustained response to treatment. Dr. Anderson also detailed other severe complications, which David will more than likely suffer as his liver disease progresses, such as brain disfunction, upper gastrointestinal bleeding, and fluid in his abdomen. Further, Dr. Anderson testified that David will likely need a liver transplant, which will reduce his quality of life. Finally, Dr. Anderson testified that even if David underwent a liver transplant, the hepatitis C would still be in his system, and would re-infect the new liver at a faster rate, causing David to suffer similar symptoms again.
In addition to Dr. Anderson's testimony, Dr. David Raiford also indicated that David, due to the cirrhosis of his liver, is at increased risk for developing liver cancer. David testified that the fear of developing decompensated cirrhosis and the fear of developing cancer is something that concerns him and something that he thinks about all the time. Therefore, based on the record before us, and the unique facts and circumstance of this case, we find that the trial court did not abuse its discretion in awarding $632,000.00 for mental pain and suffering and $895,000.00 for emotional distress, fear of cancer, and loss of enjoyment of life.

CONCLUSION
For the foregoing reasons, we affirm the judgment of the trial court. All costs of this appeal are assessed against the defendant, Our Lady of the Lake Hospitals, Inc.
AFFIRMED.
FITZSIMMONS, J., agrees and assigns additional reasons.
FITZSIMMONS, J., assigning additional reasons.
I respectfully write to assign additional reasons. While I agree with the opinion, my concern is for the victims who may have been dissuaded from suit by the Boutte decision. However, I note that the application of the rule of prescriptive suspension, to the short period of time between the Boutte and Williams decisions, would attempt to provide reasonable relief for any apparent injustice. See La. C.C. art. 3472.
NOTES
[1] OLOL filed for a writ of supervisory review with this court. On February 9, 2001, this court granted OLOL's writ application, reversing the trial court's judgment denying OLOL's exception raising the objection of prescription and granting the motion in favor of OLOL. While this case was pending before the trial court, David filed a writ application with the Louisiana Supreme Court on March 9, 2001. On May 11, 2001, the supreme court issued an order granting David's writ application, and remanded the matter to this court for a full opinion. On September 27, 2002, this court issued an opinion, denying OLOL's writ application. OLOL filed a writ application with the supreme court, which we note is pending.
[2] OLOL also asserts as error the trial court's refusal to dismiss David's claim as prescribed. However, not only did OLOL not brief this issue on appeal, but also, this court has previously ruled on this issue pursuant to a writ application and issued a full opinion upon remand from the supreme court. Therefore, we find this assignment of error is not properly before this court at this time.
[3] The case further indicates that at the time of that blood transfusion, the existence of non-A/ non-B hepatitis was also unknown.